**No. 25-10624**

IN THE

# United States Court of Appeals

FOR THE FIFTH CIRCUIT

———— ▶◀ ————

TEXAS CAPITAL BANK,

*Plaintiff-Appellant*,

v.

GOVERNMENT NATIONAL MORTGAGE ASSOCIATION; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

*Defendants-Appellees*.

_____

*On Appeal From the United States District Court
for the Northern District of Texas
Case No. 2:23-cv-00156*

## APPELLANT'S OPENING BRIEF

| | |
|---|---|
| ISAAC NESSER | CHRISTOPHER G. MICHEL |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | WILLIAM A. BURCK |
| | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 295 5th Avenue, 9th Floor | 1300 I Street NW, Suite 900 |
| New York, New York 10016 | Washington, D.C. 20005 |
| (212) 849-7100 | (202) 538-8000 |
| | |
| MATTHEW R. SCHECK | |
| JACOB M. BLISS | NICHOLAS J. CALUDA |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 300 West Sixth Street, Suite 2010 | 700 Louisiana Street, Suite 3900 |
| Austin, TX 78701 | Houston, TX 77002 |
| (737) 667-6100 | (713) 221-7000 |

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

### A. Appellant Texas Capital Bank

Christopher G. Michel
William A. Burck
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005

Nicholas J. Caluda
QUINN EMANUEL URQUHART & SULLIVAN, LLP
700 Louisiana Street, Suite 3900
Houston, TX 77002

Isaac Nesser
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016

Matthew R. Scheck
Jacob M. Bliss
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 West Sixth Street, Suite 2010
Austin, TX 78701

### B. Appellees Government National Mortgage Association and United States Department of Housing and Urban Development

Shane Huang
Kirk Manhardt
Kevin P. Vanlandingham

Samuel Hobbs
U.S. DEPARTMENT OF JUSTICE
Commercial Litigation Branch
Civil Division
P.O. Box 875, Ben Franklin Station
Washington, DC 20044

**C.    Corporate Disclosure Statement of Appellant Texas Capital Bank**

Appellant Texas Capital Bank is a wholly owned subsidiary of Texas Capital

Bancshares, Inc. (TCBI).  BlackRock, Inc. and certain affiliates and the Vanguard

Group and certain affiliates own 10% or more of TCBI's stock.


Dated:  August 14, 2025                          */s/ Christopher G. Michel*
                                                  Christopher G. Michel
                                                  *Counsel for Plaintiff-Appellant*

## REQUEST FOR ORAL ARGUMENT

This appeal raises important questions about the scope of the statutory authority conferred on Defendant-Appellee Government National Mortgage Association (Ginnie Mae) to extinguish mortgage interests under 12 U.S.C. § 1721(g)(1) and about the manner in which the agency exercised that authority against Plaintiff-Appellant Texas Capital Bank (TCB).  TCB respectfully submits that oral argument would be useful to this Court's consideration of the appeal.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

REQUEST FOR ORAL ARGUMENT ...........................................................iv

TABLE OF AUTHORITIES ........................................................................ vii

PRELIMINARY STATEMENT ......................................................................1

JURISDICTIONAL STATEMENT ................................................................4

QUESTIONS PRESENTED...........................................................................4

STATEMENT OF THE CASE.......................................................................4

    A.    Factual Background..........................................................................4

        1.    The HECM Industry ..........................................................4

        2.    RMF And Ginnie Mae's Relationship ......................................6

        3.    TCB's Loans And Ginnie Mae's Assurances ...........................7

        4.    Ginnie Mae's Reversal Of Position .....................................9

    B.    Procedural History..........................................................................11

        1.    Motion To Dismiss Proceedings...............................................11

        2.    Summary Judgment Proceedings.............................................12

SUMMARY OF ARGUMENT .....................................................................14

STANDARD OF REVIEW ..........................................................................18

ARGUMENT .............................................................................................18

I.    GINNIE MAE EXCEEDED ITS STATUTORY AUTHORITY .................18

    A.    TCB's Lien Is Not An "Interest Of The Issuer" ................................19

    B.    Ginnie Mae Did Not "Provide by Contract" For Extinguishment Of TCB's Lien.........................................................25

    C.    The Unpooled Tails Are Not "Mortgages Constituting the Trust or Pool".............................................................29

    D.    The District Court's Refusal To Recognize Section 1721(g)(1)'s Textual Limits Raises Constitutional Concerns ...........32

II.    GINNIE MAE VIOLATED TEXAS LAW ....................................34

III.    GINNIE MAE'S ACTIONS WERE ARBITRARY AND CAPRICIOUS..............................................................................35

A.   TCB Properly Alleged Its Arbitrary And Capricious APA Theory...................................................................................36

B.   TCB's Theory That Ginnie Mae's Action Was Arbitrary And Capricious Is Plausible ......................................................38

CONCLUSION ....................................................................................41

CERTIFICATE OF SERVICE .......................................................................43

CERTIFICATE OF COMPLIANCE................................................................44

# TABLE OF AUTHORITIES

**Page**

## Cases

*Armstrong v. United States*,
364 U.S. 40 (1960)..................................................................................32

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed.
Reserve Sys.*,
745 F.2d 677 (D.C. Cir. 1984)..........................................................36, 37

*Bouie v. City of Columbia*,
378 U.S. 347 (1964)..........................................................................32, 33

*Chamber of Com. v. SEC*,
85 F.4th 760 (5th Cir. 2023) ...................................................................38

*Cleveland Reg'l Med. Ctr., LP v. Celtic Props., LC*,
323 S.W.3d 322 (Tex. App.—Beaumont 2010, pet. denied) ............................34

*Data Mktg. P'ship, LP v. DOL*,
45 F.4th 846 (5th Cir. 2022) ..............................................................38, 39

*E. Enters. v. Apfel*,
524 U.S. 498 (1998)..................................................................................33

*Edberg v. Laurel Canyon Ranch Architectural Rev. Comm.*,
2011 WL 541134 (Tex. App.—San Antonio Feb. 16, 2011, pet.
denied)........................................................................................................34

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016)..................................................................................38

*Energy Coal v. CITGO Petrol. Corp.*,
836 F.3d 457 (5th Cir. 2016) ...................................................................37

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021)..................................................................................38

*FDA v. Wages & White Lion Invs., LLC*,
145 S. Ct. 898 (2025)................................................................................39

*Groden v. City of Dallas*,
  826 F.3d 280 (5th Cir. 2016) ...................................................................36

*Guerra v. Castillo*,
  82 F.4th 278 (5th Cir. 2023) ...................................................................38

*Hersh v. U.S. ex rel. Mukasey*,
  553 F.3d 743 (5th Cir. 2008) .............................................................33, 34

*John Deloach Enters., Inc. v. Telhio Credit Union, Inc.*,
  582 S.W.3d 590 (Tex. App.–San Antonio 2019, no pet.) ...........................21, 22

*Johnson v. City of Shelby*,
  574 U.S. 10 (2014)...................................................................................36

*King v. Acker*,
  725 S.W.2d 750 (Tex. App.—Houston [1st Dist.] 1987, no pet.).......................34

*Lampton v. Diaz*,
  639 F.3d 223 (5th Cir. 2011) ...................................................................18

*Lone Star State Bank of W. Tex. v. Rabo Agrifinance, LLC*,
  644 B.R. 505 (N.D. Tex. 2022) .................................................................23

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024)................................................................................18

*Mexican Gulf Fishing Co. v. DOC*,
  60 F.4th 956 (5th Cir. 2023) ...................................................................18

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*,
  463 U.S. 29 (1983)..................................................................................38

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007)...........................................................................31, 32

*NFIB v. OSHA*,
  595 U.S. 109 (2022)................................................................................18

*Niz-Chavez v. Garland*,
  593 U.S. 155 (2021)..................................................................................3

*Ovation Servs., LLC v. Richard*,
  624 S.W.3d 610 (Tex. App.—Tyler 2021, no pet.)................................21

*In re Reverse Mortg. Inv. Tr. Inc.*,
  Case No. 22-11225 (Bankr. D. Del.) ....................................................8

*Romag Fasteners, Inc. v. Fossil, Inc.*,
  590 U.S. 212 (2020).............................................................................22

*Rotkiske v. Klemm*,
  589 U.S. 8 (2019).................................................................................26

*Seago v. O'Malley*,
  91 F.4th 386 (5th Cir. 2024) ...............................................................17

*Sec. State Bank & Tr. v. Bexar Cnty.*,
  397 S.W.3d 715 (Tex. App.—San Antonio 2012, pet. denied),
  *abrogated on other grounds by Mitchell v. MAP Res., Inc.*, 649
  S.W.3d 180 (Tex. 2022).......................................................................21

*Shaw Mudge & Co. v. Sher-Mart Mfg. Co.*,
  334 A.2d 357 (N.J. Super. Ct. App. Div. 1975) ..................................23

*Simi Inv. Co. v. Harris Cnty.*,
  236 F.3d 240 (5th Cir. 2000) ...............................................................32

*Smith v. Barrett Daffin Frappier Turner & Engel, LLP*,
  735 F. App'x 848 (5th Cir. 2018) ........................................................36

*Suprise v. DeKock*,
  84 S.W.3d 378 (Tex. App.—Corpus Christi 2002, no pet.)................34

*Texas Brine Co. v. Am. Arb. Ass'n*,
  955 F.3d 482 (5th Cir. 2020) ...............................................................20

*Texas v. United States*,
  524 F. Supp. 3d 598 (S.D. Tex. 2021).................................................38

*United States v. Bess*,
  357 U.S. 51 (1958)...............................................................................22

*United States v. Kaluza*,
  780 F.3d 647 (5th Cir. 2015) .........................................................27, 28

*United States v. Lanier*,
520 U.S. 259 (1997)......................................................................32, 33

*United States v. NBD Bank, N.A.*,
922 F. Supp. 1235 (E.D. Mich. 1996) ....................................................32

*United States v. Sec. Indus. Bank*,
459 U.S. 70 (1982).................................................................................34

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*,
985 F.3d 472 (5th Cir. 2021) .................................................................39

*W. Nat'l Bank v. United States*,
8 F.3d 253 (5th Cir. 1993) ...............................................................22, 23

**<u>Rules/Statutes</u>**

Fed. R. Civ. P. 12(b)(6)....................................................................18, 38

Fed. R. App. P. 4(a)(1)(B)(ii) ...................................................................4

5 U.S.C. §§ 701. ......................................................................................4

5 U.S.C. § 706(2) ..............................................................................18, 36

12 U.S.C. § 1721(g)(1)....................................................................*passim*

28 U.S.C. § 1291 ......................................................................................4

28 U.S.C. § 1331 ......................................................................................4

28 U.S.C. § 1346(b) .................................................................................4

24 C.F.R. § 320.15(a).................................................................................7

24 C.F.R. § 320.15(b)(2)..........................................................................29

Tex. Bus. & Com. Code Ann. § 9.315....................................................23

**<u>Other Authorities</u>**

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1219
(4th ed. May 2025 update)......................................................................36

*Constitute*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/constitute ....................................................................29

BLACK'S LAW DICTIONARY (12th ed. 2024) ...........................................................22

**PRELIMINARY STATEMENT**

When Reverse Mortgage Funding LLC (RMF) fell into bankruptcy, Ginnie Mae implored TCB to loan RMF millions of dollars. The reason was to prevent thousands of senior citizens from losing payments on draws from reverse mortgages that RMF could no longer fund. TCB agreed, but on the condition that it be granted a lien over certain collateral, which the bankruptcy court approved. Ginnie Mae repeatedly assured TCB that its collateral would be a source of repayment and protection. Yet months after TCB had loaned RMF over $28 million, Ginnie Mae purportedly extinguished TCB's lien by administrative fiat in the middle of a conference call. Ginnie Mae's stark and sudden reversal left TCB out $28 million with no recourse to any collateral, even after it provided the needed liquidity to protect thousands of senior citizens. This striking collateral grab violated the Administrative Procedure Act (APA) because it exceeds the agency's statutory authority under 12 U.S.C. § 1721(g)(1) and was arbitrary and capricious. It also tortiously interfered with TCB's property interests.

The district court (Kacsmaryk, J.) initially embraced the statutory-authority and tortious-interference claims, rejecting Ginnie Mae's legal theories in denying its motion to dismiss. But the court then did an about-face of its own, accepting Ginnie Mae's arguments at summary judgment. The court also short-circuited TCB's arbitrary-and-capricious theory at the motion-to-dismiss stage by refusing to

1

consider it based on an unduly narrow reading of the complaint. In resolving each of the three claims against TCB, the court committed reversible error.

As to statutory authority, the district court had it right the first time when it recognized that Ginnie Mae's conduct cannot be squared with three independent statutory limitations on the agency's power to extinguish certain interests in certain reverse mortgages. Indeed, the crux of this case is that TCB's lien covers financial interests that are separate from and not covered by Ginnie Mae's extinguishment power under Section 1721(g)(1). Specifically, Section 1721(g)(1) grants Ginnie Mae the ability to extinguish the (1) interests of issuers of certain securities (2) so long as that power is provided for in a contract with the issuer and (3) so long as the interests in question are interests in a mortgage that is pooled and guaranteed by Ginnie Mae. Yet here, (1) TCB is not an issuer; it is undisputed that RMF was the issuer of the securities in question. (2) TCB has no contract with Ginnie Mae permitting extinguishment; again, it is undisputed that Ginnie Mae's contract was with RMF. And (3) the interests that Ginnie Mae purportedly extinguished are not pooled with any mortgage guaranteed by Ginnie Mae; as is clear from the statutory text and widely understood in the industry, the interests in question are entirely separate from pooled mortgages, and Ginnie Mae does not guarantee them. So while Ginnie Mae needed to meet all three criteria to justify its action, it went 0-for-3, providing three separate bases to reverse on the statutory-authority issue alone.

2

As for the tortious-interference claim, the district court's conclusion that Ginnie Mae did not interfere with TCB's property interests depended entirely on its conclusion that Section 1721(g)(1) justified Ginnie Mae's actions. Because the latter is wrong, the former is too.

Finally, even if Ginnie Mae had statutory authority to extinguish TCB's lien, it exercised that authority arbitrarily and capriciously. This theory was properly pleaded and readily passes the plausibility test governing motions to dismiss, yet the district court erroneously refused to even consider it. Simply put, an agency cannot induce companies to loan money, promise to protect the collateral, and then suddenly reverse course and seize the collateral—all without recognizing that it changed its position, providing any reasoned explanation, or addressing legitimate reliance interests. That is precisely what Ginnie Mae did here, and TCB's sufficient pleading of an arbitrary-and-capriciousness claim under the APA provides another basis to set aside Ginnie Mae's alarming overreach.

At bottom, if "men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). Ginnie Mae's actions here fell far short of that standard. This Court should reverse.

3

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because TCB brought suit under the APA and the Federal Tort Claims Act. *See* 5 U.S.C. §§ 701 *et seq.*; 28 U.S.C. § 1346(b). The court entered a final judgment on April 2, 2025. ROA.4161. TCB filed a timely notice of appeal on May 12, 2025. ROA.4162-64; *see* Fed. R. App. P. 4(a)(1)(B)(ii). This Court has jurisdiction under 28 U.S.C. § 1291.

## QUESTIONS PRESENTED

1. Whether Ginnie Mae exceeded its statutory authority under Section 1721(g)(1) when it purported to extinguish TCB's lien.

2. Whether Ginnie Mae's conduct violated Texas law by tortiously interfering with TCB's property interests.

3. Whether Ginnie Mae acted arbitrarily and capriciously when it flipped its previous position without explanation and in the face of TCB's reliance interests.

## STATEMENT OF THE CASE

### A.    Factual Background

#### 1.    The HECM Industry

A home equity conversion mortgage (HECM) loan is a reverse mortgage that is insured by the Federal Housing Administration (FHA) and issued only through certain FHA-approved lenders. ROA.2021-22. HECM loans are "designed

4

specifically to permit senior citizens to convert the equity of their principal residence into cash." ROA.2021. By freeing up that cash, HECM loans give senior citizens a way to supplement their retirement incomes while remaining in their homes.

In 2007, Ginnie Mae created a program that allows qualified HECM lenders to issue HECM mortgage-backed securities (HMBS) by pooling parts of multiple HECM loans together. ROA.2023, 2582-83; *see* ROA.19. Ginnie Mae then guarantees the HMBS. ROA.2023; *see* 12 U.S.C. § 1721(g)(1). As Ginnie Mae's own HMBS Guide repeatedly notes, it is an individual part or "participation" of an HECM loan—not the whole HECM loan—that is "pooled by the Issuer" and then "securitized into an HMBS" guaranteed by Ginnie Mae. *See, e.g.*, ROA.2583, 3084.

Normally, after the initial draw of the HECM loan is pooled into an HMBS, "additional amounts, including but not limited to amounts created by additional draws by the [borrower], interest accruals, mortgage insurance premiums, fees, [and] charges," are often disbursed and added to the balance of the HECM loan. ROA.2057, 3515. These distinct and additional amounts are known in the industry as "HECM tails"—or simply "tails" for short. ROA.2057, 3515.

HECM tails are not automatically pooled into an HMBS. ROA.3515-16, 3519, 3531-32; *see* ROA.2055. Instead, as widely recognized in the industry, a HECM tail is an independent "participation" that is not guaranteed by Ginnie Mae unless and until it is pooled into an HMBS. ROA.3515-16, 3519; *see* ROA.2582-

5

83.  Ginnie Mae has never, and currently does not, guarantee unpooled tails.  *See* ROA.3519, 3534-35.

## 2.    RMF And Ginnie Mae's Relationship

RMF was an FHA-approved lender of HECM loans and an approved issuer of HMBSs.  ROA.2049, 2653.  To become an HMBS issuer, RMF entered into an agreement with Ginnie Mae (the Guaranty Agreement).  ROA.2607-26.

Under the Guaranty Agreement, RMF assigned "all the right, title, and interest" in its HECM loans, including its interest in the tails, to Ginnie Mae.  ROA.2613.  Ginnie Mae then assigned certain rights and interests back to RMF to allow RMF to service the mortgages.  *See* ROA.2614-16.  RMF could transfer those rights and interests to third-parties *only with* Ginnie Mae's consent.  *See* ROA.2614.  If RMF defaulted, Ginnie Mae retained the ability to "automatically effect and complete the extinguishment of" any "interest of [RMF] in the Mortgages, the related Ginnie Participations and any Other Interests."  ROA.2623.  In that case, RMF's interests "shall become the absolute property of Ginnie Mae."  ROA.2623.  Upon extinguishment, RMF "shall have no further right to service the Mortgages, the Ginnie Participation pools, [or] any Other Interests and Securities."  ROA.2623.

This power to extinguish RMF's interests via the Guaranty Agreement is authorized by statute.  Section 1721(g)(1) empowers Ginnie Mae "in connection with any guaranty under this subsection ... to provide by contract with the issuer for

6

the extinguishment, upon default by the issuer, of any … interest of the issuer in any mortgage or mortgages constituting the trust or pool against which the guaranteed securities are issued." Section 1721(g)(1) further states that "in the event of default … the mortgages that constitute such trust or pool shall become the absolute property of" Ginnie Mae. An accompanying regulation defines a "default" as any "failure or inability of the issuer to make payments as due as well as such other events as may be identified by [Ginnie Mae] and included in the applicable guaranty agreement." 24 C.F.R. § 320.15(a).

### 3.   TCB's Loans And Ginnie Mae's Assurances

In 2015, TCB began providing financing to RMF to fund its business, including RMF's operations involving HECM loans and HMBSs. In 2021, TCB and RMF entered into the Fifth Amended and Restated Loan and Security Agreement (the Tail Agreement). ROA.2051. In the Tail Agreement, RMF granted TCB a "first priority" lien over certain "Collateral." ROA.2065. The Tail Agreement defined "Collateral" in part as RMF's "rights, title[,] and interest in HECM Tails." ROA.2053. TCB agreed that its "first priority security interest" over RMF's interests in the tails was "subject to the rights and interests of Ginnie Mae." ROA.2066.

TCB was not RMF's only lender—far from it. One such lender was Leadenhall Life Insurance Linked Investments Fund Plc (Leadenhall). ROA.2022.

When Leadenhall provided financing to RMF, Ginnie Mae made Leadenhall enter into a contemporaneous agreement explicitly recognizing that "if Ginnie Mae extinguishes" RMF's "interest in the Pooled Mortgages," then Leadenhall's security interest also "instantly and automatically will be extinguished as well." ROA.2026. Ginnie Mae and TCB never entered into such an agreement.

Despite the financing, RMF's financial troubles continued; on November 30, 2022, RMF filed for Chapter 11 bankruptcy. *See In re Reverse Mortg. Inv. Tr. Inc.*, Case No. 22-11225 (Bankr. D. Del.); ROA.753. Shortly after, RMF failed to fund payments that were due to reverse-mortgage borrowers. ROA.24. Ginnie Mae was deeply concerned about the impact of these non-payments on senior citizens. ROA.24; *see also* ROA.4051. It accordingly implored TCB to lend money to RMF. ROA.24-25, 39; *see also* ROA.4051. But TCB was not in the business of lending money to bankrupt companies and was concerned about what would happen if Ginnie Mae seized RMF's interests and rights under the Guaranty Agreement. ROA.25, 39; *see also* ROA.4052.

To alleviate those concerns, Ginnie Mae President Alanna McCargo assured TCB that it "would be able to look to the Collateral [*i.e.*, the tails] for repayment even if Ginnie Mae were to seize RMF's MSRs." ROA.25, 39. TCB received similar assurances from FHA Commissioner Julia Gordon and Executive Vice President and Chief Operating Officer of Ginnie Mae, Sam Valverde. ROA.25, 39.

8

Based on those assurances, TCB agreed to be a debtor-in-possession (DIP) lender. In both the Second Interim DIP Order and the Final DIP order, the bankruptcy court approved TCB's financing. In return for TCB's loans, the court granted TCB "first priority valid, perfected, enforceable and unavoidable liens on, and security interest in, the existing collateral secured under the [Tail Agreement]"—which included RMF's interests in the tails. ROA.2151 (Second Interim DIP order); ROA.2871 (final DIP order). The DIP orders include a section titled "United States Reservation of Rights," which states that "nothing in this … DIP Order or the DIP Loan Documents shall ... modify, impair or affect any contract, guaranty agreement, ... [or] mortgage servicing rights associated with mortgages or participations that are backed or are otherwise associated with securities guaranteed by" Ginnie Mae that was between Ginnie Mae and, either individually or together, RMF, Leadenhall, and Longbridge Financial. *See* ROA.2190-91. The reservation did not mention TCB or tails.

The interim order was entered on December 8, 2022. ROA.2136. Over the next week, TCB loaned RMF over $28 million in DIP financing. ROA.27, 4052.

### 4.    Ginnie Mae's Reversal Of Position

In late December 2022, less than a week after TCB had disbursed the DIP financing to RMF, "Ginnie Mae extinguished RMF from the HMBS program and seized and assumed control of the servicing of RMF's HMBS portfolio consisting

9

of over 30% of the HMBS market with a value of $20 billion." ROA.3926; *see also* ROA.2845-46 (termination letter). At the time, Ginnie Mae did not indicate or otherwise suggest to anyone that its extinguishment of RMF's interests had also extinguished TCB's separate first-priority, perfected lien over RMF's interests in the tails. ROA.28-29. Nor did Ginnie Mae say anything to that effect in the ensuing weeks or months, despite meeting with TCB multiple times in person and by phone, including on January 9, 10, and 27, 2023. ROA.28.

But months later, on March 9, 2023, in the middle of a conference call, Ginnie Mae suddenly told TCB that when it extinguished RMF's interests, it had also extinguished TCB's separate lien. ROA.29, 40, 4050-53. When announcing this reversal, Mr. Valverde of Ginnie Mae appeared to be "reading mechanically from a script that had been prepared by others and he refused to respond to follow up questions or comments." ROA.30, 40.

Consistent with Ginnie Mae's new position, all "funds on the unsecured balances [were] sent to [Ginnie Mae]." ROA.2465. So despite lending over $28 million to RMF at Ginnie Mae's request—all to rescue a politically-important mortgage program and the senior citizens it serves—Ginnie Mae left TCB with nothing. That result prompted FHA Commissioner Julia Gordon to express during a conference call that the FHA disagreed with Ginnie Mae's about-face. ROA.29, 40. And when RMF itself learned that TCB's money was being sent to Ginnie Mae,

10

RMF commented that it "should infuriate TCB" and was "really effed up." ROA.2465. TCB repeatedly reached out to Ginnie Mae to discuss its sudden reversal, to no avail. ROA.32.

## B. Procedural History

Left with no alternative, TCB sued Ginnie Mae and the United States Department of Housing and Urban Development in the Northern District of Texas. ROA.13-37. TCB alleged in relevant part that Ginnie Mae had violated the APA and tortiously interfered with TCB's property rights when it purported to extinguish TCB's lien over RMF's interests in the tails. ROA.33-34, 35.

### 1. Motion To Dismiss Proceedings

Ginnie Mae moved to dismiss. ROA.146. The district court denied in part and granted in part that motion.

The court first held that TCB had alleged a plausible claim that Ginnie Mae exceeded its statutory authority under Section 1721(g)(1) when it extinguished TCB's lien. Section 1721(g)(1)'s contract requirement was not met, the court reasoned, because "by Defendants' own admission, no such contract exists or existed between Ginnie Mae and TCB." ROA.741. Likewise, whereas Ginnie Mae may "extinguish the rights of mortgage *issuers*," defined as "(1) an entity 'approved … by [Ginnie Mae]' that (2) pays 'a reasonable fee for any guaranty … ' to Ginnie Mae," TCB "is—and does—neither." ROA.741-42 (emphasis in original). Finally,

11

whereas Section 1721(g)(1) references "mortgage *pools*," TCB's "claims concern *tails*," which are not pooled. ROA.742 (emphasis in original). Based on these Section 1721(g)(1) holdings, the district court also held that TCB's tortious-interference-with-property claim did not fail as a matter of law. ROA.746-47.

The district court, however, rejected TCB's separate APA theory that Ginnie Mae acted arbitrarily and capriciously, holding that this theory "may not be considered." ROA.745. On the court's account, TCB improperly raised this theory "for the first time … in its response to Defendants' Motion" to dismiss, even though the facts underlying that theory were in the complaint. ROA.745.

### 2.    Summary Judgment Proceedings

Based on the district court's motion-to-dismiss order, TCB moved for partial summary judgment on the ground that Ginnie Mae exceeded its statutory authority by extinguishing its lien. ROA.1975. The district court, however, did an abrupt reversal. ROA.3020-33. Although recognizing that TCB is not an issuer, the court now believed RMF's issuer status sufficed. ROA.3029-30. Likewise, although acknowledging that no contract between TCB and Ginnie Mae exists, the court now reasoned that the Guaranty Agreement between RMF and Ginnie Mae was all that the statute requires. ROA.3027-29. On both points, the court thought that because Ginnie Mae could extinguish RMF's interests, it also had the necessary power to extinguish TCB's lien, which the court believed sprang from those interests.

12

ROA.3027-30.  The court failed to recognize that liens exist independently from the collateral they secure.  The court further concluded that Section 1721(g)(1) empowers Ginnie Mae to "acquire" the "entirety of any mortgage that is part of an HMBS pool," including the unpooled tails.  ROA.3030-31.  That is because, according to the court, Section 1721(g)(1) allows Ginnie Mae to "seize the entirety of any mortgage that is part of the HMBS pool," does not "split such mortgage[s] into smaller parts," and does not "distinguish between the portions securitized and unsecuritized."  ROA.3031.

Following this reversal, Ginnie Mae sought summary judgment.  ROA.3047.  To help the court consider Ginnie Mae's motion, TCB moved to supplement the administrative record with a report of its technical expert in "structured finance and mortgages" with nearly forty years of experience in the mortgage-securitization industry.  ROA.3423.  The report explains the relevant industry background to this dispute, including reverse mortgages, the HECM program, and HMBSs.  ROA.3510-19.  It also includes the expert's conclusion that HECM tails are not pooled by default, ROA.3532, and that unpooled tails, like those at issue here, "are distinct from pooled mortgages and not derivative of pooled mortgage participations," ROA.3531-36.  It further underscores that Ginnie Mae does not guarantee unpooled tails and "does not get paid or charged a guarantee fee" based

on unpooled tails. ROA.3519, 3535. The district court granted TCB's motion to supplement the administrative record. ROA.4143-46.

Nonetheless, the district court granted Ginnie Mae's summary-judgment motion. The district court held that Ginnie Mae acted within its statutory authority when it extinguished TCB's lien. ROA.4157. The court incorporated its reasoning from its prior order denying TCB's summary-judgment motion and held that TCB's expert report did not change the analysis. ROA.4154-55. The court then expanded on why tails qualify as part of the pooled mortgages. ROA.4155-58.

The court likewise granted summary judgment to Ginnie Mae on TCB's tortious-interference-with-property claim. Based entirely on its conclusion that Ginnie Mae's actions were authorized under Section 1721(g)(1), the court first concluded that TCB's tortious-interference-with-property claim was preempted by Section 1721(g)(1)'s express preemption provision. ROA.4159. Similarly, the court also concluded that TCB cannot prevail on the third element of its tortious-interference claim—"the existence of a 'just cause' or 'legal excuse'"—because Section 1721(g)(1) justified Ginnie Mae's actions. ROA.4159.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's grant of judgment to Ginnie Mae on each of TCB's claims.

14

**I.**    For three independent reasons, Ginnie Mae exceeded its statutory authority in purporting to extinguish TCB's lien, which is separate and distinct from the interests that Ginnie Mae can extinguish under Section 1721(g)(1).

**A.**    Under Section 1721(g)(1), Ginnie Mae has authority to extinguish a specified "interest of the issuer," but TCB is not the issuer of any interest that Ginnie Mae purported to extinguish.  That suffices to resolve this case.  The district court ignored that straightforward conclusion by holding that Ginnie Mae's power to extinguish RMF's interests in the tails also necessarily included the right to extinguish TCB's lien over RMF's interests in the tails.  But that ignores that the lien was TCB's own distinct, independent property interest.  So even when Ginnie Mae extinguished RMF's interests—which transferred those interests back to Ginnie Mae rather than destroying them—TCB's lien followed that involuntary transfer under the bedrock principle that liens survive property transfers.

**B.**    Ginnie Mae's purported extinguishment of TCB's lien exceeded the agency's authority under Section 1721(g)(1) for the independent reason that there is no contract between Ginnie Mae and TCB authorizing the extinguishment of TCB's lien.  Ginnie Mae concedes that privity of contract does not exist between TCB and Ginnie Mae.  That too could end this case.  Contrary to the district court's position, the Guaranty Agreement between RMF and Ginnie Mae cannot satisfy Section 1721(g)(1)'s contract requirement.  That contract only empowered Ginnie Mae to

15

extinguish RMF's interests, not TCB's separate lien. Ginnie Mae knows how to create such contractual authority—and it has done so with other third-party lenders to RMF like Leadenhall—but it chose not to do so with TCB.

**C.** Ginnie Mae's action exceeded its statutory authority for the further reason that the unpooled HECM tails are not interests in "mortgages constituting the trust or pool against which the guaranteed securities are issued"—the only interests Ginnie Mae has the power to extinguish under Section 1721(g)(1). It is undisputed that the tails were never pooled and never securitized; as widely understood by the industry and Ginnie Mae itself—and as confirmed by TCB's expert report before the court at summary judgment—the tails are separate and distinct interests that are not intertwined with pooled mortgages. The district court nonetheless concluded that because the tails are part of mortgages that are pooled, Ginnie Mae can also extinguish interests in the unpooled tails. But that "unified mortgage" theory contradicts uniform industry practice and makes no sense of Section 1721(g)(1), because it would allow Ginnie Mae to extinguish interests that it does not guarantee. The statutory text does not support such a strained reading.

**D.** Taken as a whole, the district court's interpretation of Section 1721(g)(1) raises alarming constitutional concerns. At bottom, Ginnie Mae extinguished TCB's lien on collateral securing over $28 million after saying it would not do so, even though TCB did nothing wrong. By holding that Section 1721(g)(1)

16

condones that action, the district court's interpretation runs into both the Takings Clause and the Due Process Clause. Avoiding those serious constitutional questions is another reason to reject the district court's interpretation.

**II.**    Ginnie Mae's actions tortiously interfered with TCB's lien under Texas law. The district court's rationale for rejecting this claim is based entirely on its errant holding that Ginnie Mae acted within Section 1721(g)(1)'s scope. So this holding too must be reversed, and the claim remanded for further proceedings.

**III.**    Even if Ginnie Mae possessed the authority to extinguish TCB's lien, its actions were arbitrary and capricious under the APA. The district court erred out of the gate by refusing to consider this claim at the motion-to-dismiss stage because it believed that TCB never raised it in its complaint. That is false. It is blackletter law that a complaint need not allege the specific legal theory at issue, only the facts supporting that theory. TCB certainly pleaded enough facts to show that Ginnie Mae acted arbitrarily and capriciously. Ginnie Mae induced TCB to loan RMF millions of dollars by repeatedly representing that it would not touch its collateral. But after TCB actually loaned that money, Ginnie Mae without any analysis or explanation reversed course and seized the collateral—the very thing it had said it would not do. And it did not consider TCB's substantial reliance interests when making this change of position. That is the epitome of arbitrary and capricious agency action.

17

**STANDARD OF REVIEW**

This Court reviews de novo a district court's grant of summary judgment and questions of statutory interpretation and applies the same summary judgment standards as the district court. *Seago v. O'Malley*, 91 F.4th 386, 389 (5th Cir. 2024). The Court reviews de novo the grant of a Rule 12(b)(6) motion to dismiss. *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011).

**ARGUMENT**

**I.    GINNIE MAE EXCEEDED ITS STATUTORY AUTHORITY**

"Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided." *NFIB v. OSHA*, 595 U.S. 109, 117 (2022). Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C); *see Mexican Gulf Fishing Co. v. DOC*, 60 F.4th 956, 963 (5th Cir. 2023). When deciding whether an agency exceeded its statutory authority, courts "exercise independent judgment in determining the meaning of the statutory provisions" in question. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).

The statute in question here is 12 U.S.C. § 1721(g)(1), which grants Ginnie Mae the power to extinguish the rights and interests of HMBS issuers in mortgages

18

pooled into an HMBS if an issuer defaults, so long as that extinguishment power is provided by contract with the issuer. The relevant provision states in full:

> The Association is hereby empowered, in connection with any guaranty under this subsection, whether before or after any default, to provide **[1]** *by contract with the issuer for the extinguishment, upon default by the issuer, of any redemption, equitable, legal, or other right, title, or* **[2]** *interest of the issuer* **[3]** *in any mortgage or mortgages constituting the trust or pool against which the guaranteed securities are issued*; and with respect to any issue of guaranteed securities, in the event of default and pursuant otherwise to the terms of the contract, the mortgages that constitute such trust or pool shall become the absolute property of the Association subject only to the unsatisfied rights of the holders of the securities based on and backed by such trust or pool.

12 U.S.C. § 1721(g)(1) (emphasis and bracketed numbers added). Ginnie Mae exceeded its authority under Section 1721(g)(1) when it extinguished TCB's first-priority lien on RMF's interests in the tails associated with certain HECM reverse mortgages because (A) the lien was not an "interest of the issuer," (B) doing so was not "provide[d] by contract with the issuer," and (C) the tails were not part of the "mortgages constituting the trust or pool against which the guaranteed securities are issued." The district court correctly recognized as much in denying Ginnie Mae's motion to dismiss but then erred by reversing course and granting Ginnie Mae summary judgment while denying TCB the same.

## A.　TCB's Lien Is Not An "Interest Of The Issuer"

There is no dispute that the "issuer" of the HMBS that Ginnie Mae purportedly extinguished is RMF—not TCB. The statute describes an issuer as an entity that

19

(1) is approved by Ginnie Mae and (2) pays a reasonable fee to Ginnie Mae for a guaranty. 12 U.S.C. § 1721(g)(1). TCB does not meet these requirements. TCB is a lender to an approved HMBS issuer (RMF), not an approved issuer itself or an entity that pays a fee to Ginnie Mae for a guaranty. There is also no dispute that the lien is not an "interest" of RMF's. *Id.* Rather, the lien is TCB's separate property granted to it in exchange for providing loans to RMF. ROA.2151, 2228. Thus, by the plain terms of the statute, Ginnie Mae's extinguishment power does not apply to TCB's lien. That resolves this case: Ginnie Mae cannot extinguish TCB's lien over RMF's interests in the tails. *See Texas Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 486 (5th Cir. 2020) ("When the plain language of a statute is unambiguous and does not lead to an absurd result, [this Court's] inquiry begins and ends with the plain meaning of that language." (brackets and quotation omitted)).

The district court recognized that straightforward logic in denying Ginnie Mae's motion to dismiss, correctly concluding that TCB meets "neither" statutory requirement of an "issuer." ROA.741-42. But it did a 180-degree turn at summary judgment. There, the court worked around the "issuer" limitation by holding that because Ginnie Mae could extinguish *RMF's interests* in the tails as an issuer, it could also extinguish TCB's *lien over RMF's interests in the tails* because that lien supposedly derived from RMF's interests. ROA.3029-30. That logic is flawed several times over.

20

First, the district court fundamentally erred by assuming that TCB's lien has no independent existence outside of RMF's interests in the tails.   In the Tail Agreement, RMF granted TCB a "first priority" lien in certain "Collateral." ROA.2065.  It defined "Collateral" as RMF's "rights, title[,] and interest in HECM Tails." ROA.2053.  Then, four years later in connection with the DIP financing, the bankruptcy court granted TCB "first priority valid, perfected, enforceable and unavoidable liens on, and security interest in, the existing collateral secured under the [Tail Agreement]."  ROA.2151 (Second Interim DIP order); ROA.2871 (final DIP order).  As those agreements show, the lien itself (the security interest) is separate and distinct from RMF's underlying interests in the tails (the collateral).

That understanding accords with well-established law.  Liens are distinct, enforceable property interests that exist independently from the collateral itself.  *See Sec. State Bank & Tr. v. Bexar Cnty.*, 397 S.W.3d 715, 721 (Tex. App.—San Antonio 2012, pet. denied) ("[A] lienholder possesses a legally protected property interest."), *abrogated on other grounds by Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180 (Tex. 2022); *Ovation Servs., LLC v. Richard*, 624 S.W.3d 610, 620 (Tex. App.—Tyler 2021, no pet.) (same); *John Deloach Enters., Inc. v. Telhio Credit Union, Inc.*, 582 S.W.3d 590, 596 (Tex. App.–San Antonio 2019, no pet.) ("[A] first lienholder generally has sufficient interest in the property to sue a third party for conversion.");

21

*see also Lien*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A legal right or interest that a creditor has in another's property …."").

So even though Ginnie Mae can extinguish RMF's interests in the tails, that does not prove that it can also extinguish TCB's separate and independent lien over those interests. The district court's refusal to acknowledge that point effectively amended Section 1721(g)(1) to say that Ginnie Mae can extinguish an "interest of the issuer, *or any party possessing a lien or other security interest over the issuer's interests*." But of course, a court cannot "read into [the] statute[] words that aren't there." *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020).

Contrary to the district court's conclusion, ROA.3029-30, it does not matter that RMF's interests underlying TCB's lien were themselves subject to Ginnie Mae's extinguishment power. Ginnie Mae's extinguishment power does not give the agency the ability to destroy RMF's interest in the tails such that they cease to exist. Rather, upon "extinguishment," RMF's rights and interests "become the absolute property" of Ginnie Mae. 12 U.S.C. § 1721(g)(1). In other words, the rights and interests are simply involuntarily transferred back to Ginnie Mae.

That understanding accords with the blackletter principle that a lien follows the transfer of property, even if the transfer is involuntary. *See W. Nat'l Bank v. United States*, 8 F.3d 253, 255 (5th Cir. 1993) ("[I]t is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere."

22

(quoting *United States v. Bess*, 357 U.S. 51, 57 (1958))); *Shaw Mudge & Co. v. Sher-Mart Mfg. Co.*, 334 A.2d 357, 360 (N.J. Super. Ct. App. Div. 1975) ("[W]hile a debtor's rights in collateral may be voluntarily or involuntarily transferred, including by way of levy, such transfer would still be subject to a perfected security interest." (internal citation omitted)); *see also* Tex. Bus. & Com. Code Ann. § 9.315 (providing that a "security interest ... continues in collateral notwithstanding ... disposition thereof unless the secured party authorized the disposition free of the security interest"). The district court itself has recognized—in another case—that a lien on collateral "continues after the collateral is sold to another party." *Lone Star State Bank of W. Tex. v. Rabo Agrifinance, LLC*, 644 B.R. 505, 515 (N.D. Tex. 2022) (Kacsmaryk, J.). Thus, while RMF's interests were subject to Ginnie Mae's involuntary-transfer power, Ginnie Mae's involuntary transfer of RMF's interests could not extinguish TCB's separate lien over those interests. On the contrary, the lien traveled back to Ginnie Mae along with RMF's interests in the tails.

Recognizing that TCB's lien survived the extinguishment of RMF's interests in the tails would not, as the district court and Ginnie Mae mistakenly suggest, grant issuers the ability to nullify Ginnie Mae's extinguishment power. ROA.2555-56, *see* ROA.3027-30. That is true first and foremost because the extinguishment power—rightly understood—covers only the ability to involuntarily transfer RMF's interests in the tails back to Ginnie Mae; it has nothing to do with TCB's separate

23

lien on those interests.    Thus, TCB's lien did not nullify Ginnie Mae's extinguishment power at all.  Ginnie Mae retained and exercised that power here.

Ginnie Mae also retained power to prevent RMF from creating interests like TCB's if Ginnie Mae had concerns about RMF doing so.  The Guaranty Agreement between Ginnie Mae and RMF forbade RMF from transferring any interests in the tails "without the consent of Ginnie Mae in its sole and absolute discretion." ROA.2614.  Thus, Ginnie Mae had the tools needed to protect its extinguishment right if it wanted to.  But here, it never did.  There is no indication in the record that Ginnie Mae withheld consent when RMF entered into the Tail Agreement.  Indeed, Ginnie Mae has never argued the Tail Agreement is somehow invalid for lack of consent.  And in the DIP financing orders, Ginnie Mae negotiated for a reservation of rights related to any contract, guaranty agreement, or various other agreements, between Ginnie Mae and other entities—namely (either individually or together) RMF, Leadenhall, and Longbridge.  ROA.2190 (Second Interim DIP Order); ROA.2920-21 (Final DIP Order).  Notably, Ginnie Mae's reservation of rights did not include any mention of TCB or tails.  Instead, Ginnie Mae's reservation of rights included only the "mortgage servicing rights associated with mortgages or participations that are backed or are otherwise associated with securities guaranteed by Ginnie Mae." ROA.2190, 2921.  Ginnie Mae is a sophisticated party, and if Ginnie Mae had intended to include a reservation of rights as to the tails, it would

24

have done so—particularly given the fact that TCB's interest in the tails was explicitly recognized in the DIP Orders. ROA.2150-51, 2870-71.

These actions surrounding the Tail Agreement and the DIP orders establish as a matter of law that Ginnie Mae consented to RMF's creation of TCB's lien. If more evidence were needed, it was Ginnie Mae that implored TCB to loan RMF the needed funds. ROA.25, 39; *see also* ROA.4051. To induce TCB to make the loans, Ginnie Mae repeatedly assured TCB that it would not extinguish the lien. ROA.25, 39. It would defy credulity to think that Ginnie Mae made these pleas and assurances but also somehow withheld the consent needed for RMF to grant TCB a lien on RMF's interests in the tails. There is simply no merit to the view that RMF unilaterally nullified Ginnie Mae's extinguishment right.

At bottom, Section 1721(g)(1) authorizes Ginnie Mae to extinguish only the interests of an issuer. TCB is not an issuer, and its lien over RMF's interests in the tails is distinct from RMF's interests in the tails. The district court erred as a matter of law in concluding otherwise. This Court could reverse on that basis alone.

**B.    Ginnie Mae Did Not "Provide by Contract" For Extinguishment Of TCB's Lien**

Section 1721(g)(1) independently requires Ginnie Mae to "provide by contract" for the power to extinguish TCB's lien. Here, there is no such contract between Ginnie Mae and TCB. That is undisputed. Indeed, Ginnie Mae conceded that "privity of contract does not exist between TCB and [Ginnie Mae]." ROA.164.

25

That absence is especially glaring here because Ginnie Mae and a separate RMF lender (Leadenhall) did enter into a contract explicitly granting Ginnie Mae the right to extinguish Leadenhall's rights in addition to RMF's. ROA.2024; *see* ROA.2026 (agreement between lender, issuer, and Ginnie Mae agreeing that "if Ginnie Mae extinguishes Issuer's … interest in the Pooled Mortgages … the Security Interest instantly and automatically will be extinguished as well"). That Ginnie Mae "knows how to" provide for such a contractual power but "omitted" such a contract with TCB strongly indicates that no such power exists. *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019). The lack of contract between Ginnie Mae and TCB can independently end this appeal.

The district court openly recognized the lack of contract between Ginnie Mae and TCB. ROA.3027. And at the motion-to-dismiss stage, the court correctly found that lack of contract dispositive. ROA.741. Yet at summary judgment, the court again reversed itself. There, while recognizing the lack of contract between Ginnie Mae and TCB, the court held that the Guaranty Agreement between RMF and Ginnie Mae provided the requisite "contract" needed to satisfy Section 1721(g)(1). ROA.3027-28. It reached that conclusion for two conflicting reasons. Neither withstands scrutiny.

First, although the court recognized that Ginnie Mae never claimed to "directly extinguish[] TCB's rights," it nevertheless concluded that the Guaranty

26

Agreement gave Ginnie Mae the right to directly "extinguish others' entire rights in the mortgages." ROA.3027-28 (emphasis omitted). But the Guaranty Agreement does not grant that power. Instead, it grants Ginnie Mae the power to "automatically effect and complete the extinguishment of" any "interest of the Issuer in the Mortgages, the related Ginnie Participations *and any Other Interests*." ROA.2623 (emphasis added).[2] The district court interpreted "any Other Interests" to cover the interests of third parties. But the sentence's syntax makes clear that the phrase "Other Interests"—like the accompanying phrase "the related Ginnie Participations"—refers to additional interests *of the issuer itself*, not third parties' interests. After all, if the district court were correct that "Other Interests" simply referred to interests of any entity, Ginnie Mae would have unfettered authority to extinguish interests of any entity in the world—an implausibly broad construction of a bilateral contract between Ginnie Mae and RMF. *Cf. United States v. Kaluza*, 780 F.3d 647, 660-61 (5th Cir. 2015) ("[W]here general words follow an enumeration of specific terms, the general words are read to apply only to other items like those specifically enumerated." (quotation omitted)). It is therefore no wonder

---

    [2]  The phrase "Other Interests" is defined as "accrued interest on such mortgages, related servicing fees and monthly insurance premiums paid to FHA to maintain mortgage insurance on such mortgages that do not constitute Ginnie Participations." ROA.2614.

27

that Ginnie Mae itself has never purported to have the power to directly extinguish TCB's lien.

The district court alternatively reasoned that when Ginnie Mae extinguished RMF's interests in the tails under the Guaranty Agreement, it also necessarily extinguished TCB's lien on those interests because the lien was "derive[d] … from RMF." ROA.3027. But this simply repeats the error that the court made on the issuer requirement: It conflates TCB's lien over RMF's interests in the tails with RMF's interests themselves. As explained, TCB's lien exists independently of RMF's interests in the tails and followed those interests even after Ginnie Mae involuntarily transferred (extinguished) them.

For this reason, the court also wrongly faulted TCB for acknowledging in the Tail Agreement that its lien was "subject to the rights and interests of Ginnie Mae"— as if this somehow recognized Ginnie Mae's power to extinguish TCB's lien. ROA.2066. It shows no such thing. Ginnie Mae's rights and interest did not include the ability to extinguish TCB's lien. Instead, it included only the power to involuntarily transfer RMF's interests in the tails back to Ginnie Mae subject to TCB's lien. Likewise, the district court erred in concluding that RMF tried to grant TCB more than what it had. ROA.3028. RMF granted TCB a lien on property that everyone recognized could be involuntarily transferred back to Ginnie Mae. That power simply has no impact on TCB's independent lien.

28

With the detours through the Guaranty Agreement disposed of, the analysis comes back to where it began:  The undisputed fact that there is no contract between TCB and Ginnie Mae authorizing it to extinguish TCB's lien.

## C.    The Unpooled Tails Are Not "Mortgages Constituting the Trust or Pool"

Ginnie Mae's extinguishment of TCB's lien violated Section 1721(g)(1) for one final reason:  TCB's interest in the tails that Ginnie Mae purported to extinguish is not part of the "mortgages constituting the trust or pool" that Ginnie Mae has power to extinguish under its authority to extinguish "any mortgage or mortgages constituting the trust or pool against which the guaranteed securities are issued."

By its terms, Section 1721(g)(1) limits Ginnie Mae's extinguishment authority to mortgages that "constitute," *i.e.*, "make up" or "form" the trust or pool that Ginnie Mae is guaranteeing.  *See Constitute*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/constitute (last accessed Aug. 12, 2025).  The implementing regulation confirms that Ginnie Mae may "extinguish all the right, title, or other interest of the issuer in the pooled mortgages."  24 C.F.R. § 320.15(b)(2).  Here, unpooled tails do not fit that description.  Rather, as unchallenged evidence based on industry practice confirms, it is the initial draw on the HECM mortgage loan that is initially pooled together with other HECM participations to make up an HMBS guaranteed by Ginnie Mae.  ROA.3515-16.  In contrast, tails are "additional amounts, including but not limited to amounts created

29

by additional draws by the [borrower], interest accruals, mortgage insurance premiums, fees, [and] charges," that are often disbursed and added to the balance of the HECM loan *after* the initial draw has been securitized and pooled into an HMBS. ROA.2057; *see also* ROA.3515-16. At that point, as TCB's expert confirmed, the tails may be retained, separately sold, or may or may not be subsequently securitized into a completely different pool. ROA.3532-34. In fact, some are "not eligible" to be pooled at all. ROA.3532. Unpooled tails are understood in the industry to be "distinct from pooled mortgages" in an HMBS. ROA.3531. It is undisputed that the tails in question were never securitized or pooled. ROA.3024, 3054. They were therefore not subject to Ginnie Mae's extinguishment power.

The district court initially recognized this, ROA.742, but for the third and final time it did an about-face. At summary judgment, the district court concluded that since the statutory term is "mortgage," once any part of a HECM mortgage is pooled, Ginnie Mae is "empowered to seize the entirety" of the mortgage—even the parts of the mortgage that do not make up a securitized pool. ROA.3030-32. That unified mortgage view does not hold.

As stated—and confirmed by undisputed expert evidence before the district court on summary judgment—mortgages that are part of the HECM program have separate parts. Some parts are pooled; others are not. Even Ginnie Mae's own HMBS Guide recognizes that only a "portion of a HECM loan" may be pooled and

30

securitized.  ROA.2583, 3084.  And the parts that are pooled are still properly called "mortgages constituting the trust or pool against which the guaranteed securities are issued."  The phrase easily bears that meaning.  After all, the initial draw that is pooled is properly referred to as a "mortgage."

And limiting the phrase to include only parts of the mortgages that are pooled is the only way to make sense of Section 1721(g)(1) as a whole.  Section 1721(g)(1) expressly clarifies that Ginnie Mae's authority to act under that subsection operates "in connection with any guaranty under this subsection."  But Ginnie Mae only *guarantees* and gets paid based on securities backed by parts of mortgages that are pooled into an HMBS—not the unpooled tails of those mortgages—as confirmed by TCB's expert.  ROA.3519, 3534-35.  It makes no sense of the statutory structure— not to mention industry norms—to allow Ginnie Mae to extinguish rights in the tails when it does not guarantee them.  Yet that is precisely what the district court did by viewing the term "mortgages" literally and in isolation from the rest of Section 1721(g)(1).  Statutory text should not be interpreted in such a manner.  *See, e.g.*, *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) ("It is a fundamental canon of statutory construction that the words of a statute must be read

in their context and with a view to their place in the overall statutory scheme."

(quotation omitted)).  The district court's unified mortgage view is therefore wrong.[3]

### D. The District Court's Refusal To Recognize Section 1721(g)(1)'s Textual Limits Raises Constitutional Concerns

For any one of the above three reasons, Ginnie Mae exceeded its statutory

authority under Section 1721(g)(1) when it purported to extinguish TCB's lien.  In

addition to those textual problems, the district court's contrary interpretation of

Section 1721(g)(1) also raises alarming constitutional concerns—which is all the

more reason to reject it.

The "total destruction by the Government of all value of … liens, which

constitute compensable property, has every possible element of a Fifth Amendment

'taking' and is not a mere 'consequential incidence' of a valid regulatory measure."

*Armstrong v. United States*, 364 U.S. 40, 48 (1960).  And separately, under the Due

Process Clause, the government cannot "arbitrar[ily] and unlawful[ly] attempt to

interfere with private property," *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249

(5th Cir. 2000), nor can courts adopt "unforeseeable and retroactive judicial

expansion of narrow and precise statutory language" consistent with basic fair

---

[3] *United States v. NBD Bank, N.A.*, 922 F. Supp. 1235 (E.D. Mich. 1996), cited by the district court, is not to the contrary because it was decided well before the HMBS program was even established and appears to involve traditional forward mortgages, not reverse mortgages, which do not have tails.

notice, *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964); *see E. Enters. v. Apfel*, 524 U.S. 498, 532-33 (1998); *United States v. Lanier*, 520 U.S. 259, 265-67 (1997).

Here, Ginnie Mae extinguished TCB's lien on collateral securing over $28 million in loans—all after inducing TCB to lend that money to protect a politically important program and assuring TCB that its collateral would be safe. It did so even though TCB did not break any promise to Ginnie Mae, default on any payment, or do anything else to forfeit its interest in the collateral. After initially finding Ginnie Mae's actions to exceed the narrow extinguishment powers under Section 1721(g)(1), the district court found that Section 1721(g)(1) actually allowed Ginnie Mae to extinguish TCB's lien all along. That is an "unexpected and indefensible" interpretive reversal of Section 1721(g)(1), *Bouie*, 378 U.S. at 354 (quotation omitted), and it runs straight into the above constitutional prohibitions under the Takings Clause and the Due Process Clause.

Accordingly, under the doctrine of constitutional avoidance, this Court should reject the district court's interpretation of Section 1721(g)(1) as authorizing that result, even if the Court thinks that its interpretation could be plausible. *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 753-54 (5th Cir. 2008) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." (quotation omitted)). Instead, because

33

TCB's interpretation of Section 1721(g)(1) is, at minimum, "fairly possible," *id.* (quotation omitted), the Court should adopt it and avoid the constitutional minefield that the district court's view raises. *See United States v. Sec. Indus. Bank*, 459 U.S. 70, 82 (1982) (invoking the doctrine of constitutional avoidance to reject a proposed interpretation of a statute that might have resulted in a Takings Clause violation).

## II.     GINNIE MAE VIOLATED TEXAS LAW

The district court also granted summary judgment to Ginnie Mae on TCB's tortious interference with property claim.  ROA.4158-60.

Under Texas law, any "intentional invasion of, or interference with, property, property rights, personal rights or personal liberties causing injury without just cause or excuse is an actionable tort."  *Suprise v. DeKock*, 84 S.W.3d 378, 380 (Tex. App.—Corpus Christi 2002, no pet.) (quoting *King v. Acker*, 725 S.W.2d 750, 754 (Tex. App.—Houston [1st Dist.] 1987, no pet.)).   To succeed on a tortious-interference-with-property claim, a plaintiff must prove (1) that an interference with one's property or property rights occurred; (2) such interference was intentional and caused damage; and (3) the interference was conducted without just cause or legal excuse.  *Cleveland Reg'l Med. Ctr., LP v. Celtic Props., LC*, 323 S.W.3d 322, 349 (Tex. App.—Beaumont 2010, pet. denied); *accord Edberg v. Laurel Canyon Ranch Architectural Rev. Comm.*, 2011 WL 541134, at *5 (Tex. App.—San Antonio Feb. 16, 2011, pet. denied).

34

Regarding the first two elements, a reasonable jury could conclude that Ginnie Mae intentionally interfered with TCB's property rights when it purported to extinguish TCB's lien on RMF's interests in the tails. Ginnie Mae's extinguishment of TCB's lien qualifies under any definition of "interference," not least because TCB has been entirely deprived of its "enjoyment and use of" its property. *Suprise*, 84 S.W.3d at 382. The district court did not hold otherwise.

Instead, the district court held that TCB did not meet the third "just cause or legal excuse" element because Section 1721(g)(1) explicitly authorized Ginnie Mae to extinguish TCB's lien. It also separately held that TCB's tortious-interference claim was preempted by Section 1721(g)(1). ROA.4159-60. Those grounds, however, depend entirely on the district court's prior holding that Ginnie Mae did not exceed its statutory authority under Section 1721(g)(1) when it extinguished TCB's lien. Thus, if this Court reverses the district court's grant of summary judgment on the APA claim, it should also reverse on the tortious-interference claim.

## III.    GINNIE MAE'S ACTIONS WERE ARBITRARY AND CAPRICIOUS

The Court should independently reverse the district court's grant of Ginnie Mae's motion to dismiss regarding TCB's separate APA theory that Ginnie Mae acted arbitrarily and capriciously when it extinguished TCB's lien. Contrary to the district court's conclusion, that theory was properly pleaded and is readily plausible.

35

## A.   TCB Properly Alleged Its Arbitrary And Capricious APA Theory

The district court declined to consider TCB's arbitrary-and-capricious theory because, according to the district court, TCB did not raise this legal theory in its complaint. ROA.745. That was legal error. To "stave off threshold dismissal for want of an adequate statement" of a claim, TCB's complaint needed only to inform Ginnie Mae "of the *factual* basis for" its APA claim, including the arbitrary-and-capricious theory. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (emphasis added). It "is unnecessary to set out a *legal theory* for the plaintiff's claim for relief." 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1219 (4th ed. May 2025 update) (emphasis added); *accord Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016). Indeed, "factual allegations alone may state a claim for relief—even without referencing the precise legal theory (or statute) upon which the plaintiff seeks relief." *Smith v. Barrett Daffin Frappier Turner & Engel, LLP*, 735 F. App'x 848, 854 (5th Cir. 2018); *see also Johnson*, 574 U.S. at 11 (holding that the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

TCB met that standard. TCB pleaded its APA claim under 5 U.S.C. § 706(2), ROA.33-34, which includes "a catchall[] picking up administrative misconduct not covered by the other more specific paragraphs" of the APA—colloquially referred to as an arbitrary-and-capricious claim. *See Ass'n of Data Processing Serv. Orgs.,*

36

*Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J.). It also pleaded the critical facts necessary to support its contention that Ginnie Mae acted arbitrarily and capriciously, explaining that Ginnie Mae had assured TCB that it could look to the tails for protection to induce TCB to make the loan to RMF, only to later reverse course and extinguish TCB's lien—the very thing it had said it would not do. ROA.28-30, 39. That easily establishes a plausible arbitrary-and-capricious theory. *See* pp. 37-41, *infra*.

Thus, the district court erred by dismissing TCB's APA claim simply because TCB did not set out that precise legal theory by name in its complaint.

The district court's cited authority does not prove otherwise. It is of course true that a "complaint may not be amended by the briefs in opposition to a motion to dismiss." ROA.745 (quoting *Energy Coal v. CITGO Petrol. Corp.*, 836 F.3d 457, 462 n.4 (5th Cir. 2016)). But that rule applies to adding new *factual allegations* in a brief rather than to a *legal theory* based on the alleged facts. In *Energy Coal*, for example, this Court rightly rejected an attempt by the plaintiff to add new factual allegations on appeal. 836 F.3d at 462 n.4. By contrast, TCB made no attempt to allege new facts in its opposition to Ginnie Mae's motion to dismiss; it merely sought to develop a legal theory underlying its APA claim using the facts it pleaded. This

Court should accordingly reverse and remand for the district court to consider TCB's

theory that Ginnie Mae's action was unlawfully arbitrary and capricious.[4]

**B.      TCB's Theory That Ginnie Mae's Action Was Arbitrary And Capricious Is Plausible**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead

sufficient facts "to state a claim to relief that is plausible on its face." *Guerra v.

Castillo*, 82 F.4th 278, 284-85 (5th Cir. 2023) (quotation omitted). TCB readily met

that standard.

"Arbitrary-and-capricious review requires this court to scrutinize the record

to determine whether the agency has 'examine[d] the relevant data and articulate[d]

a satisfactory explanation for its action including a rational connection between the

facts found and the choice made.'" *Chamber of Com. v. SEC*, 85 F.4th 760, 768 (5th

Cir. 2023) (alterations in original) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v.

State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Put differently, the

"arbitrary-and-capricious standard requires that agency action be reasonable and

reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423

(2021). This "review is not toothless." *Data Mktg. P'ship, LP v. DOL*, 45 F.4th

---

[4]   The court also cited a district court case for the proposition that TCB's two APA theories are not "meaningfully equivalent." ROA.745 (citing *Texas v. United States*, 524 F. Supp. 3d 598, 632 (S.D. Tex. 2021)). Even if true, that observation fails to overcome binding authority from the Supreme Court and this Court emphasizing that pleading legal theories is not required.

846, 856 (5th Cir. 2022) (quotation omitted). This Court should accordingly "set aside any action premised on reasoning that fails to account for relevant factors or evinces a clear error of judgment." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*, 985 F.3d 472, 475 (5th Cir. 2021) (quotation omitted).

Here, Ginnie Mae failed to display awareness of its abrupt change of position as to TCB's lien, wholly failed to provide a reasoned explanation for that change, and failed to consider TCB's serious reliance interests. Any one of those three failures suffices on its own to find Ginnie Mae's actions arbitrary and capricious. *See FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 917 (2025) (holding that an agency can change its position "*as long as*" the agency provides "a reasoned explanation" for the change, "display[s] awareness" that it is changing position, and considers "serious reliance interests" (emphasis added) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016))). These guardrails ensure that agencies do not "mislead regulated entities" to their detriment. *Id.* Yet that is exactly what Ginnie Mae did—to the extreme.

In early December 2022, Ginnie Mae's then-President Alanna McCargo assured TCB that it "would be able to look to the Collateral [*i.e.*, the tails] for repayment even if Ginnie Mae were to seize RMF's MSRs." ROA.13-15, 25, 39. TCB received similar assurances from FHA Commissioner Julia Gordon and Executive Vice President and Chief Operating Officer of Ginnie Mae, Sam

Valverde. ROA.25, 39. In late December 2022, less than a week after TCB had disbursed the DIP financing to RMF, Ginnie Mae extinguished RMF's rights in its HMBS portfolio. ROA.28. When Ginnie Mae extinguished RMF's rights and consistent with its prior representation, Ginnie Mae did not even remotely suggest to anyone that its actions as to RMF's rights and interests had impacted or extinguished TCB's lien. ROA.28-29. Nor did Ginnie Mae say *anything* to that effect in the ensuing weeks or months, despite meeting with TCB multiple times in person and by phone, including on January 9, 10, and 27, 2023. ROA.28. But months later, on a March 9, 2023 *conference call* with TCB, Ginnie Mae suddenly and without warning expressed the startling position that its seizure of RMF's interests had, unbeknownst to anyone at the time, also extinguished TCB's lien. ROA.29-30.

This abrupt change of position lacked any reasoned explanation (or any analysis for that matter), and Ginnie Mae displayed no awareness of the abrupt change. Indeed, on the conference call, Mr. Valverde on behalf of Ginnie Mae appeared to be "reading mechanically from a script that had been prepared by others and he refused to respond to follow up questions or comments." ROA.30, 40. The reversal was so shocking and sudden that even the FHA Commissioner on the call stated that she disagreed with Ginnie Mae. ROA.29, 40. In short, Ginnie Mae ignored its previous position entirely and chose instead to memory hole its repeated

40

assurances to TCB that it could look to the RMF collateral for repayment. ROA.24-26, 28-30, 39-40.

That failure to acknowledge the prior view or provide any reasonable explanation for the change in position dooms Ginnie Mae's actions. But its sudden extinguishment of TCB's lien is more egregious here because it also failed to consider TCB's serious reliance interests. To repeat, Ginnie Mae's top officials, including Ginnie Mae's president, assured TCB that its lien would be protected. ROA.25, 39. TCB loaned tens of millions of dollars based on those assurances. ROA.14, 27, 39-40. It would not have done so without those assurances and certainly would not have done so had it known that Ginnie Mae would simply take its collateral. ROA.39-40. Yet there is no indication that Ginnie Mae considered those induced reliance interests at all when it flipped its view.

This type of bait-and-switch on a lender who stepped in to stave off catastrophic consequences to senior citizens relying on RMF—without any justification for the switch—is the definition of arbitrary-and-capricious action.

## CONCLUSION

For these reasons, this Court should reverse the district court's grant of judgment to Ginnie Mae on all three of TCB's claims.

41

Dated:  August 14, 2025

                  Respectfully submitted,

                  */s/    Christopher G. Michel*

ISAAC NESSER

QUINN EMANUEL URQUHART & SULLIVAN, LLP

295 5th Avenue, 9th Floor

New York, New York 10016

(212) 849-7000

MATTHEW R. SCHECK

JACOB M. BLISS

QUINN EMANUEL URQUHART & SULLIVAN, LLP

300 West Sixth Street, Suite 2010

Austin, TX 78701

(737) 667-6100

CHRISTOPHER G. MICHEL

WILLIAM A. BURCK

QUINN EMANUEL URQUHART & SULLIVAN, LLP

1300 I Street NW, Suite 900

Washington, D.C. 20005

(202) 538-8000

NICHOLAS J. CALUDA

QUINN EMANUEL URQUHART & SULLIVAN, LLP

700 Louisiana Street, Suite 3900

Houston, TX 77002

(713) 221-7000

*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing brief was electronically filed on August 14, 2025, and will, therefore, be served electronically upon all counsel of record.

Dated:  August 14, 2025                                    /s/    *Christopher G. Michel*
                                                                        Christopher G. Michel

                                                                        *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 9,637 words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  August 14, 2025                                   /s/    *Christopher G. Michel*
                                                                      Christopher G. Michel

                                                                      *Counsel for Plaintiff-Appellant*